UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL THOMAS BUTKA,                    Case No.: 16-13923

     Plaintiff,                         Sean F. Cox
     v.                                 United States District Judge

COMMISSIONER OF SOCIAL                    Stephanie Dawkins Davis
SECURITY,                                 United States Magistrate Judge

     Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 14, 16)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On November 4, 2016, plaintiff Michael Thomas Butka filed the instant suit.

(Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge Sean F. Cox referred this matter to the undersigned for the purpose of

reviewing the Commissioner's unfavorable decision denying plaintiff's claim for a

period of disability, disability insurance benefits, and supplemental security

income (Dkt. 3).  This matter is before the Court on cross-motions for summary

judgment.  (Dkt. 14, 16).

### B.   Administrative Proceedings

Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income on July 13, 2011, alleging disability beginning on May 31, 2007.  (Tr. 20).[1]  The claims were initially denied on December 5, 2011, and on February 8, 2013, Administrative Law Judge John Rabaut issued an unfavorable decision, finding plaintiff not disabled from the alleged onset date through the date of the decision.  (*Id.*).

Plaintiff filed another application for a period of disability and disability insurance benefits on June 3, 2014.  (Tr. 20).  The claims were initially disapproved by the Commissioner on November 3, 2014.  (Dkt. 73, Pg ID 129-142).  Plaintiff requested a hearing and on September 1, 2015, plaintiff appeared with counsel, before Administrative Law Judge ("ALJ") Carol Guyton, who considered the case de novo.  (Tr. 20).  In a decision dated November 19, 2015, the ALJ found that plaintiff was not disabled.  (Tr. 32).  Plaintiff requested a review of this decision.  (Tr. 14).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on September 9, 2016, denied plaintiff's request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

---

[1] The Administrative Record appears on the docket at entry number 7.  All references to the same are identified as "Tr. __", referring to the administrative record page number found in the lower right corner of each page.

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**.

## II.    ALJ FINDINGS

Plaintiff, born in 1961, was 49 years old on the alleged disability onset date. (Tr. 30).  He has past relevant work as a boilermaker and water proofer.  (Tr. 30). The ALJ applied the five-step disability analysis and found at step one that plaintiff had not engaged in substantial gainful activity since October 21, 2011, the alleged onset date.  (Tr. 22).  At step two, the ALJ found that plaintiff's degenerative disc disease of the cervical spine, bilateral carpal tunnel syndrome, osteoarthritis of the right ankle, migraines, status post multiple drug overdoses, history of polysubstance abuse, cocaine dependence in remission, anxiety disorder, cognitive disorder, and depressive disorder were "severe" within the meaning of the second sequential step.  (Tr. 23).  However, at step three, the ALJ found no evidence that plaintiff's impairments singly or in combination met or medically equaled one of the listings in the regulations.  (*Id.*).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant cannot climb

3

ladders, ropes or scaffolds; can occasionally climb ramps or stairs, balance, stoop, crouch or kneel; cannot crawl; can occasionally perform overhead reaching or handling; should avoid even concentrated exposure to the use of moving machinery and all exposure to unprotected heights; is limited to work consisting of simple, routine and repetitive tasks performed in a work environment free of fast-paced production needs, involving only simple, work-related decisions, with few, if any, workplace changes and only occasional interaction with the public.

(Tr. 26).  At step four, the ALJ found that plaintiff was unable to perform any past relevant work.  (Tr. 30)  At step five, the ALJ denied plaintiff benefits because she found that there were jobs that exist in significant numbers in the national economy that plaintiff can perform.  (Tr. 31).

## III.    DISCUSSION

### A.    Standard of review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").

"However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of*

*Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.     <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

8

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

Plaintiff claims error in the ALJ's conclusion that she was bound by the prior RFC of ALJ Rabaut under *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997). Plaintiff points out that the ALJ in this case added three new severe impairments (carpal tunnel syndrome, migraines, and cognitive disorder), which amount to such a change in circumstances that a new RFC should have been created. The Commissioner argues that the ALJ properly adopted the prior RFC.

Generally, principles of *res judicata* require that the Commissioner be bound by a prior decision unless a claimant demonstrates a change of circumstances on a subsequent application. *Id.* at 842. In *Drummond*, the Sixth Circuit held that Social Security claimants and the Commissioner are barred from re-litigating issues that have previously been determined at the administrative level. *Id.*; *see also* 42 U.S.C. § 405(h) ("The findings and decision of the Commissioner of Social Security after a hearing shall be binding on all individuals who were parties to such hearing."); Acquiescence Ruling 98-3(6), 63 FR 29770-01, 1998 WL 274051 (Soc.

Sec. Admin. June 1, 1998); Acquiescence Ruling 98-4(6), 63 FR 29771-01, 1998

WL 274052 (Soc. Sec. Admin. June 1, 1998).  Where a claimant who has

previously been adjudicated "not disabled" seeks to avoid application of *res*

*judicata*, he must provide proof that his condition has worsened since the date of

the prior decision to such a degree that he is no longer capable of engaging in

substantial gainful activity.  *Pinkett v. Comm'r of Soc. Sec.*, 2016 WL 5369611, at

*3 (E.D. Mich. Sept. 26, 2016) (citing *Vesey v. Comm'r of Soc. Sec.*, 2012 WL

4475657, at *10 (E.D. Mich. Aug. 6, 2012)); *Wilkerson v. Comm'r of Soc. Sec.*,

2010 WL 817307, at *12 (S.D. Ohio Mar. 5, 2010) (finding ALJ not bound by

prior decision under *Drummond* where one doctor's opinion and another doctor's

testimony of improvement in mental impairment showed plaintiff no longer met

criteria under Listing 12.05C); *Zimmerman v. Comm'r of Soc. Sec.*, 2016 WL

356080, at *5 (E.D. Mich. Jan. 29, 2016) (ALJ's determination that he was not

bound by prior sedentary RFC because plaintiff's knee impairment had improved

was supported by substantial evidence showing that the plaintiff had undergone a

total right knee replacement, records showed no problems with the right knee after

the replacement, and the claimant's back pain was now well-managed and

controlled with medication); *cf. Martin v. Comm'r of Soc. Sec.*, 2014 WL 840228

(E.D. Mich. Mar. 4, 2014), *adopting report and recommendation* (finding ALJ's

decision that *res judicata* applied was correct where "there was very little evidence to suggest a different *physical* RFC . . ." for new physical impairments).

The addition of new impairments since the date of the prior decision does not in and of itself render *Drummond inapplicable*. In *Merrill v. Comm'r of Soc. Sec.*, 2015 WL 571008 (S.D. Ohio Feb. 11, 2015), the ALJ found six impairments not previously recognized by the first ALJ. *Id.* at *11. However, substantial evidence supported the ALJ's determination that the new impairments did not impose additional or different limitations from those found in the prior decision. *Id.* Specifically, there was no objective evidence to support further restrictions in functional capacity, no medical source opined that the plaintiff was more limited than the ALJ determined, and some of the impairments were either managed with medication or did not require treatment at all. *Id.*

Where substantial evidence supports an ALJ's determination that there was no worsening or change in condition of impairments that existed at the time of the prior decision, the prior RFC is binding. In *Nogle v. Comm'r of Soc. Sec.*, 2017 WL 2838350 (E.D. Mich. May 26, 2017), *report and recommendation adopted*, 2017 WL 2857493, the ALJ determined that *res judicata* applied thus making the prior RFC binding. *Id.* at *4. In support, the ALJ discussed the medical evidence pertaining to the plaintiff's physical condition and concluded that the evidence did not indicate significant changes in condition since the prior RFC. *Id.* at *4-5.

Specifically, x-rays, MRIs, and physical exams of the spine showed an essentially

unchanged condition; the plaintiff's self-reports of "flare-ups" in back pain were

contradicted by other self-reports that back pain had either improved or was stable;

and despite having a record of reduced range of motion, at other times he had full

range of motion.  *Id.*  The court held that the ALJ's decision to apply *res judicata*

was correct.  *Id.* at *6.

Here, as explained more fully below, plaintiff has not met his burden of

proving a change in condition sufficient to deny the prior RFC preclusive effect.

Although plaintiff has three new severe impairments since the previous RFC

decision, the record does not support the assertion that these three new

impairments amount to such a change in condition that the prior RFC no longer

applies.

1.    Carpal Tunnel Syndrome

a.    Parties' Arguments

Plaintiff argues that his bilateral carpal tunnel syndrome resulted in an

impairment that would significantly alter the type of work he could perform,

warranting a new RFC.  (Dkt. 14, Pg ID 635).  Yet, according to plaintiff, the ALJ

did not discuss the impact this impairment had on his RFC; specifically, the ALJ

did not add a fingering limitation to the RFC.  (*Id.*).  As evidence of new

limitations, plaintiff points out that he complained of numbness and tingling in

both hands to Dr. Bahadur Bohra and that he routinely informed Dr. Ram Garg about the tingling and numbness.  (*Id.* at Pg ID 636).  Dr. Garg gave plaintiff the following limitations: plaintiff would only be able to grasp, turn, or twist his hands for 40% of the workday on the right side and 50% on the left side, and could only engage in fine manipulations or reach in front of his body or overhead for the same periods.  (*Id.* at Pg ID 630).  Additionally, plaintiff testified about numbness in his hands at the hearing before ALJ Guyton.  (*Id.*; Tr. 54).  Given this evidence, plaintiff asserts the ALJ should have considered the impacts of carpal tunnel on his ability to work rather than merely adopting the prior RFC.  (Dkt. 14, Pg ID 636).

The Commissioner argues in response that it is plaintiff's burden to provide medical evidence of additional limitations and to list the limitations he feels should have been considered.  (Dkt. 16, Pg ID 654-55).  According to the Commissioner, the evidence in the record does not establish any greater functional limitation than the limitations found in the prior RFC.  (*Id.* at Pg ID 55).  The ALJ did consider plaintiff's claims of hand numbness, tingling, and difficulty using his hands, but found that plaintiff's examinations showed intact fine motor movement.  (*Id.* at Pg ID 656).  Moreover, the ALJ gave only limited weight to Dr. Garg's opinion that plaintiff was severely limited by carpal tunnel syndrome.  The Commissioner contends that subjective complaints are not enough to establish a disabling

14

limitation.  Thus, the evidence does not support limitations due to carpal tunnel syndrome.  (*Id.*).

In reply, plaintiff states that he provided evidence of limitations due to carpal tunnel (limitations with fingering and handling) in the form of Dr. Garg's opinion.  (Dkt. 17, Pg ID 672).  The limitations Dr. Garg listed would, according to the vocational expert, be work preclusive.  (*Id.*).  Further, plaintiff argues that the Commissioner's reasoning relies, in part, on post-hoc rationalizations of the ALJ's findings.  (*Id.*) (citing *Hyatt Corp. v. N.L.R.B.*, 939 F2d 361, 367 (6th Cir. 1991)).

b.     Analysis

Plaintiff's carpal tunnel diagnosis does not rise to the level of a change in condition sufficient to defeat application of *res judicata*.  Indeed, the record does not support a disabling functional limitation brought on by plaintiff's carpal tunnel syndrome.  The ALJ reviewed plaintiff's hearing testimony, Dr. Garg's opinions, and an opinion from Dr. Bohra in reaching her decision.  The ALJ acknowledged plaintiff's testimony that he had experienced numbness in his hands.  (Tr. 20).  However, "Ruling 96–7p[,1996 WL 374186 at *2,] provides that a claimant's statements about [his] symptoms 'is not enough in itself to establish the existence of a physical or mental impairment or that the individual is disabled.'"  *Sands v. Colvin*, 2013 WL 4591601, at *6 (E.D. Tenn. Aug. 28, 2013).  Plaintiff sought treatment for back pain and tingling and numbness in both hands from Dr. Bohra

between February 2013 and May 2013.  (Tr. 28; Tr. 253-60).  After an electrodiagnostic examination, Dr. Bohra concluded that the results were consistent with bilateral carpal tunnel syndrome.  (Tr. 257).  However, Dr. Bohra found there was no evidence of peripheral neuropathy, cervical radiculopathy, or brachial plexopathy.  (Tr. 257, 395).  Dr. Garg, on the other hand, gave plaintiff strict limitations due to carpal tunnel syndrome, opining that plaintiff would only be able to grasp, turn, or twist his hands for 40% of the workday on the right and 50% on the left, and could only engage in fine manipulations or reach in front of his body or overhead for the same periods.  (Tr. 481-482).  Yet, Dr. Garg found many times that Plaintiff had intact fine motor movement despite reported difficulty closing his hands.  (Tr. 285, 287, 297, 302, 307, 317, 322, 327, 332, 337, 342, 347, 352, 357, 361, 366, 370).  Dr. Garg also noted "normal strength in the upper extremities." (Tr. 285, 287, 302, 307, 312, 322, 347, 357, 361, 370).  And, he specifically stated that plaintiff has no fingering limitations.  (Tr. 486).  Because of these internal inconsistencies, the ALJ accorded Dr. Garg's opinion little weight.[2]  (Tr. 27-28). Therefore, the strict limitations he imposed on plaintiff's abilities due to carpal tunnel syndrome were not persuasive.

---

[2] Plaintiff did not directly challenge the ALJ's weight assignments, as discussed more fully below.

Here, as in *Merrill*, there is no credible objective medical evidence establishing greater functional limitations caused by carpal tunnel syndrome than those found in the prior RFC.  2015 WL 571008, at *11.  Thus, the ALJ did not err in applying *Drummond* to the current RFC based on the added carpel tunnel syndrome diagnosis, and she properly did not include any such limitations in the current RFC.  *See Thiel v. Comm'r of Soc. Sec.*, 2015 WL 4644794, at *7 (W.D. Mich. Aug. 4, 2015) ("An ALJ is not required to include restrictions on handling and fingering in the RFC based on a diagnosis of carpal tunnel syndrome where the claimant's physicians have not imposed such restrictions.").

    2.    Migraines

        a.    Parties' Arguments

Plaintiff argues the ALJ erred in failing to include restrictions based on his migraines.  Dr. Garg listed limitations on plaintiff's work abilities due to his migraines, stating that plaintiff would get up to eight headaches per month, would have to lie down for four to six hours during the workday, would be off task about 25% of the workday, and would be absent from work about four days a month due to headaches.  (Dkt. 14, Pg ID 636).  While plaintiff acknowledges these limitations are "extreme," he believes the ALJ should have imposed new, lighter— though notably unspecified—restrictions based on his migraines.  (*Id.*).

The Commissioner argues that the ALJ properly adopted the prior RFC with regard to migraines also.  (Dkt. 16, Pg ID 657).  The ALJ gave little weight to Dr. Garg's opinion because the opinion is based solely on plaintiff's subjective complaints rather than objective testing to confirm complaints such as frequent headaches.  (*Id.*) (citing *Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 156 (6th Cir. 2009) ("Here, substantial evidence supports the ALJ's determination that the opinion of Dr. Boyd, Poe's treating physician, was not entitled to deference because it was based on Poe's subjective complaints, rather than objective medical data.") and *Mitchell v. Comm'r of Soc. Sec.*, 330 Fed. Appx. 563, 569 (6th Cir. 2009) ("A doctor's report that merely repeats the patient's assertions is not credible, objective medical evidence and is not entitled to the protections of the good reasons rule.").  According to the Commissioner, the ALJ properly credited great weight to state agency consultant Dr. Ashok Kaul's opinion concluding that plaintiff is limited to simple, routine tasks—a limitation consistent with the record.  (*Id.* at Pg ID 659).  The Commissioner further points out that plaintiff did not challenge the ALJ's assignment of little weight to Dr. Garg's opinion, and therefore has waived that argument.  (*Id.*) (citing *Hollon ex. rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("[W]e limit our consideration to the particular points that Hollon appears to raise in her brief on appeal.")).  Further, plaintiff characterized Dr. Garg's limitations as "extreme."  (*Id.*).

Plaintiff argues that he did challenge the assignment of little weight to Dr. Garg's opinion by challenging the overarching RFC, and by arguing that if Dr. Garg's limitations were not accepted the ALJ should add some lighter limitations. (Dkt. 17, Pg ID 673).  Plaintiff also argues that if he suffered a headache while at work the headache would have a significant impact on his ability to work.  (*Id.*).

    b.  Analysis

The record does not support the contention that plaintiff's migraines were of such a degree that they created functional limitations that were not in existence when the prior RFC was assessed.  Although plaintiff was diagnosed with migraines, substantial evidence supports the ALJ's determination that the symptoms are not so severe that plaintiff cannot work.  In the prior decision the ALJ noted Dr. Garg's opinion in December 2012 that plaintiff's headaches would cause him to be off task 25% of the day and would miss more than four days of work per month.  (Tr. 97).  The prior ALJ gave that statement limited weight because his findings were not supported by objective or other substantial evidence and because of plaintiff's activities, such as household chores, going shopping, and driving a vehicle.  (*Id.*).  In 2015 Dr. Garg gave plaintiff the same limitations and the current ALJ gave that opinion little weight.  (Tr. 490).  Disregarding the weight determinations, both reports give the same limitations resulting from headaches.  Because there was no change in the suggested limitations since the prior decision,

there is no reason to believe that plaintiff's condition has changed to such a degree that a new RFC should be assessed.

Moreover, the record does not suggest that the RFC should include limitations based on plaintiff's migraines. Dr. Garg gave a treatment plan of "avoid any triggers for migraines" starting May 2014. (Tr. 274, 280, 287, 289, 303, 308, 313, 343, 353, 358, 362, 367). Plaintiff's symptoms remained unchanged throughout the duration of his relationship with Dr. Garg. (*Id.*). He stated that plaintiff would need to take a 4-6 hour break during the workday for his headaches to lie down, that he would be off task 25% or more due to his headaches, and that plaintiff would miss work more than four days a month. (*Id.*). The ALJ accorded Dr. Garg's medical opinions little weight because Dr. Garg "noted no objective testing to confirm the frequency of the claimant's headaches and appeared to rely solely on the claimant's subjective complaints." (Tr. 28); *see also Cottrell v. Comm'r of Soc. Sec.*, 2017 WL 4270525, at *2 (E.D. Tenn. Sept. 26, 2017) (ALJ did not err in discounting physician's opinion where physician did not identify objective medical findings to support opinion that claimant's migraines prevented her from working a 40-hour workweek); *Frankowski v. Astrue*, 2012 WL 6153399, at *7 (N.D. Ohio Nov. 14, 2012), *report and recommendation adopted*, 2012 WL 6152998 (N.D. Ohio Dec. 11, 2012) (claimant did not sustain his burden of proving that his migraines were sufficiently

severe to merit limitations in the RFC because he did not identify any objective

medical evidence establishing the severity of migraines or their effect on his ability

to work).[3]  As discussed below, plaintiff did not specifically challenge the ALJ's

weight determinations.  Further, the ALJ found plaintiff's testimony on the

intensity, persistence, and limiting effects of his symptoms to be only partially

credible.  (Tr. 27, 30); *see also McCormick v. Sec'y of Health & Human Servs.*, 861

F.2d 998, 1003 (6th Cir. 1988) ("[c]laimant did not introduce objective medical

evidence to support the existence or severity of the alleged migraine headaches,"

but relied solely upon her own incredible testimony to establish a disabling level

of headache pain).  Indeed, plaintiff testified that he has headaches three to four

times a day, (Tr. 57-58), but Dr. Garg noted that plaintiff would get 6-8 headaches

per month.  (Tr. 488).  Plaintiff does not challenge the ALJ's credibility

determination, and as noted earlier it is the ALJ's role not the reviewing court's, to

---

[3] There is case law in this Circuit indicating that a physician's failure to note objective medical testing to confirm the severity and frequency of headaches is not a good reason to discount that opinion.  *See, e.g., Saunders v. Comm'r of Soc. Sec.*, 2015 WL 6858323, at *5 (S.D. Ohio Sept. 8, 2015 (noting that because migraine headaches cannot be diagnosed or confirmed through laboratory or diagnostic techniques, lack of objective findings is not a good reason for discounting a physician's opinion) (citing *Jones v. Astrue,* 2010 WL 2464845, at *4 (D. Kan. Mar. 22, 2010).  *Donerson v. Comm'r of Soc. Sec.*, 2017 WL 6987958, at *7 (N.D. Ohio Dec. 28, 2017), noting the inconsistency in case law in general, found that the Sixth Circuit and courts within this Circuit have held that "lack of objective evidence substantiating the alleged disabling headaches is what precludes the allowance of disability benefits."  (quoting *Long v. Comm'r of Soc. Sec.*, 56 Fed. Appx. 213, 214 (6th Cir. 2003)).  However, here, even if it were error to discount Dr. Garg's opinion as it relates to headaches, the error is harmless because the record does not reflect a change in plaintiff's functional ability due to headaches since the previous RFC.

evaluate the credibility of witnesses, including that of the claimant.  *See Rogers*, 486 F.3d at 247 (6th Cir. 2007).  Further, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citation omitted).

Because Dr. Garg's limitations resulting from headaches did not change since the prior decision and in light of the weight and credibility determinations discussed above, the ALJ's decision that the prior RFC is binding is supported by substantial evidence.  *See Merrill*, 2015 WL 571008, at *11.

3.    Cognitive Disorder

a.    Parties' Arguments

Plaintiff takes issue with the ALJ's purported failure to explain how his new cognitive disorder severe impairment would individually, rather than in conjunction with the rest of mental impairments, affect his work ability.  (Dkt. 14, Pg ID 637).  After a consultative evaluation by Dr. Hugh Bray in 2014, Dr. Bray stated that "plaintiff's cognitive impairments would cause impaired attention and concentration, memory impairment for learning and recall of new information, impaired decision-making skills, slowed information processing speed, poor organization, planning, and sequencing abilities, and poor judgment in social

22

situations." (*Id.*).  Limited licensed psychologist Leonard McCulloch tested

plaintiff and found that his intelligence testing revealed a full-scale IQ of 85,

indicative of low average intellectual functioning.  (*Id.*).  According to plaintiff,

this medical evidence shows functional limitations that impede his ability to

perform normal job functions.  Thus, adoption of the prior RFC was erroneous and

fails take into account his cognitive disorder apart from his other mental

impairments.

The Commissioner argues that the ALJ addressed plaintiff's mental

impairments, together and separately, and correctly concluded that there was no

worsening or change in condition necessitating a new RFC.  (Dkt. 16, Pg ID 660).

In both plaintiff's 2011 and 2014 consultative examinations with Dr. Bray, his

responses were normal, he was found to have no difficulty in carrying out simple

instructions and performing repetitive, routine, simple tasks.  (*Id.*).  These findings

are consistent with the record.  (*Id.* at Pg ID 661).  Further, plaintiff's IQ of 85 was

not the only thing Dr. McCulloch discussed.  Dr. McCulloch indicated plaintiff's

ability to understand, remember, and carry out simple instructions would be

"variably impacted," and his ability to respond appropriately and adapt to changes

in the work setting or to perform work related activities would be "severely

impacted." (*Id.* at Pg ID 662).  Therefore, according to the Commissioner, Dr.

McCulloch's finding as it relates to plaintiff's functional abilities is not necessarily

at odds with the assessed RFC because the ALJ limited plaintiff to a work environment free of fast-paced production needs, with few, if any, workplace changes. (*Id.* at Pg ID 662-63). Further, the ALJ accorded McCulloch's opinion limited weight. (Tr. 29).

The Commissioner also argues that there is no indication that the ALJ failed to fully consider plaintiff's cognitive disorder, because the ALJ stated that she "considered singly and in combination" whether plaintiff met a listing for her mental impairments and then proceeded to develop the RFC by "consider[ing] all symptoms" associated with plaintiff's impairments. (*Id.* at Pg ID 664, citing Tr. 24, 26). Finally, the Commissioner points out that plaintiff failed to raise the issue of the ALJ's assignment of weight to Dr. McCulloch's assessment, and thus has waived that argument. (*Id.* at Pg ID 663).

In reply, plaintiff argues that Dr. Bray's statement that plaintiff could perform simple, repetitive tasks *at times* means he is disabled because SSR 96-8p's directive to adjudicate disability based on the claimant's ability to work in an ordinary work setting in an eight hour workday. (Dkt. 17, Pg ID 674-75). If plaintiff is able to perform simple, repetitive tasks *at times*, then he cannot work an eight hour workday, and is therefore disabled. (*Id.* at Pg ID 675). Further, Dr. McCulloch stated that plaintiff's ability to understand and carry out tasks would be "variably impacted" by his cognitive disorder. (*Id.*). If plaintiff is variably

impacted, then he is disabled because there would be times he would be unable to work. (*Id.*). Finally, plaintiff denies that he waived the issue of the ALJ's weight determination as to Dr. McCulloch by failing to expressly attack the weight assignments because it is clear that plaintiff does take issue with the weight assignments. Plaintiff challenged the ALJ's RFC assessment, which necessarily and implicitly raises the issue of weight assignment. (*Id.* at Pg ID 676).

        b.    Analysis

As to plaintiff's argument that the ALJ erred in not considering his cognitive disorder separately from his other mental impairments, the regulations explain that an ALJ is not required to discuss each impairment individually to determine how that impairment affects a claimant's RFC.

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, we will consider the combined impact of the impairments throughout the disability determination process

20 C.F.R. § 404.1523(c); *see also Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1071 (6th Cir. 1992) (stating that it is error for an ALJ to consider impairments separately to determine whether, on their own, they would qualify the

claimant for disability, rather than considering the combined effect of the impairments).  Plaintiff's argument that it was error for the ALJ not to consider his cognitive disorder impairment separately, rather than in combination with his other impairments, lacks merit.  According to 20 C.F.R. § 404.1523(c), the ALJ did not err by failing to separate her analysis by each individual mental impairment.  The ALJ correctly analyzed the effect all of plaintiff's mental impairments would have on his ability to perform work functions, including his cognitive disorder.

As to *res judicata*, the record supports the ALJ's determination that the prior RFC is binding in this case.  In the previous decision the ALJ lists the following severe mental impairments: anxiety disorder; dementia, not otherwise specified; and depressive disorder.  (Tr. 92).  The decision under review lists the following severe mental impairments: anxiety disorder, cognitive disorder, and depressive disorder.  (Tr. 23).  Plaintiff argues that the cognitive disorder impairment amounts to a change in condition from what the evidence showed in the prior case.  However, the medical evidence post-dating the prior decision on plaintiff's mental impairments, including evidence of plaintiff's memory problems and intellectual ability, does not establish that his cognitive disorder or mental impairments changed to such a degree that *res judicata* should not apply.

Although plaintiff continued to present with complaints of memory problems since the prior decision, there is insufficient evidence that there was a

26

worsening of condition since the prior RFC.  In the prior decision the ALJ

discussed Dr. Bray's 2011 report on plaintiff's mental health including his

diagnosis of dementia.  (Tr. 95).  Dr. Bray stated,

> [T]he claimant's mental ability to understand, remember
> and carry out tasks appears to be moderately impaired.
> In interacting with the examiner today the claimant was
> able at times to perform simple repetitive tasks, it is
> likely the claimant could not handle more complex tasks.
> Difficulty in performing multiple step tasks is significant.
> . . . The claimant's mental ability to maintain attention,
> concentration, persistence, pace and effort is moderately
> to significantly impaired.

(*Id.*).  In 2014, after the prior decision, Dr. Bray's examination summary stated the

following as to plaintiff's mental impairments: "There is no difficulty in the

patient's ability to comprehend and carry out simple directions, and perform

repetitive, routine simple tasks.  There is mild difficulty in the patient's ability to

comprehend complex tasks.  The patient is able to carry out complex tasks with

physical limitations, per patient."  (Tr. 377).  Dr. Bray also noted that plaintiff had

impaired attention and concentration and memory impairment for learning and

recall of new information.  (*Id.*).  The ALJ gave this opinion significant weight.

(Tr. 29).  These two reports do not suggest a change in condition in plaintiff's

memory problems or intellectual ability.  Indeed, the reports are nearly identical.

Other medical evidence post-dating the prior decision also fails to establish a

change in condition requiring a new RFC.  Plaintiff treated with Team Mental

Health Services from February 2015 to June 2015 for depression and anxiety where he complained about difficulty remembering things. (Tr. 28; 405-78). Many treatment records note average intellectual functioning, intact memory, no impairments in judgment, and a GAF score of 50. (Tr. 28; *see also* Tr. 424, 428, 430, 432, 434, 436). However, some treatment records note average intellectual functioning but poor memory. (Tr. 438, 442, 446, 450). Looking again to Dr. Bray's opinions above, the Team Mental Health Services reports do not suggest a change in condition from what Dr. Bray reported in 2011. (Tr. 95, 96). Indeed, that Team Mental Health Services found intact memory in numerous reports is in contradiction to plaintiff's reported memory problems in 2011. *See Quinn v. Colvin*, 2015 WL 9460144, at *7, n. 8 (finding conclusion that claimant exhibited varying degrees of memory loss inconsistent with finding intact memory).

Plaintiff also relies on limited license psychologist McCulloch's statement that plaintiff's full-scale IQ score of 85 is indicative of low average intellectual functioning. (Dkt. 14, Pg ID 637). McCulloch diagnosed plaintiff with major depressive disorder, stress exacerbating somatic symptoms, substance abuse disorders, and cognitive disorder. (Tr. 29). However, the ALJ assigned McCulloch's opinion limited weight because it is inconsistent with plaintiff's average intellectual functioning, intact memory, and significant activities of daily

living including doing laundry, vacuuming, going to restaurants, going to the dentist, and going shopping.  (*Id.*).

As shown above, reports on plaintiff's mental impairments in 2011 are nearly identical to those in the relevant period.  The record evidence accorded significant weight suggests there was no change in condition in plaintiff's mental impairments.  *See Nogle*, 2017 WL 2838350, at *4-5; *see also Schmiedebusch v. Comm'r of Soc. Sec.,* 536 Fed. Appx. 637, 645–46 (6th Cir. 2013) (affirming ALJ's conclusion under *Drummond* that additional severe impairment and related evidence reflecting little increase in symptomatology since previous ALJ determination did not support a more restrictive RFC assessment).  Therefore, the ALJ's determination that the prior RFC is binding presents no error.

Finally, plaintiff's argument in reply that Dr. Bray's statement that plaintiff is able *at times* to perform simple, repetitive tasks means he is disabled is misplaced.  First, that statement comes from Dr. Bray's 2011 examination, pre-dating the prior decision.  Medical evidence that predates the prior decision is not helpful in determining whether there is new evidence of changed condition after the prior decision.  *See Corney v. Colvin*, 2015 WL 2338087, at *5 (S.D. Ohio May 13, 2015) (stating that medical evidence that predates the prior ALJ's decision is not probative of whether the plaintiff's condition improved or not after the prior decision for purposes of the *Drummond* analysis).  Second, it appears plaintiff may

have taken that statement out of context.  Dr. Bray was not opining on plaintiff's

ability to work in general; rather, Dr. Bray appears to have been opining on

plaintiff's interactions with Dr. Bray during the examination.  Indeed, Dr. Bray

stated, "In interacting with the examiner today the claimant was able at times to

perform simple repetitive tasks."  (Tr. 391).  It is not clear, as plaintiff suggests,

that this statement means that, in general, plaintiff could perform simple repetitive

tasks only at times.

### 4.    Treating Physician Rule Argument Waived

Plaintiff does not explicitly challenge the ALJ's weight determinations.

Instead, he argues in his reply brief that he implicitly challenged the weight

determinations by "challenging the overarching RFC" and by arguing that if Dr.

Garg's limitations were rejected, the ALJ should have added at least some

limitation.  (Dkt. 17, Pg ID 673).  He provides no other argument on the subject.

Plaintiff has waived any argument here because "issues adverted to in a

perfunctory manner, unaccompanied by some effort at developed argumentation,

are deemed waived.  It is not sufficient for a party to mention a possible argument

in the most skeletal way, leaving the court to . . . put flesh on its bones."

*McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).  Here, plaintiff does

not provide argument that the ALJ's weight determinations were in error, nor has

plaintiff cited to any authority establishing that challenging an RFC determination

is sufficient alone to challenge the weight given to a particular physician's opinion, and the undersigned knows of no such authority.

Moreover, arguments raised for the first time in a reply brief are waived. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs . . . do not provide the moving party with a new opportunity to present yet another issue for the court's consideration. Further the non-moving party ordinarily has no right to respond to the reply brief. . . . As a matter of litigation fairness and procedure, then, we must treat [such issues] as waived.") (quoting *Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)); *Newsome v. Comm'r of Soc. Sec.*, 2014 WL 5362456 at *8 (E.D. Mich. Sept. 24, 2014) (citing *Martinez v. Comm'r of Soc. Sec.*, 2011 WL 1233479 at *2 (E.D. Mich. March 30, 2011)). Thus, any treating physician arguments are waived.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that defendant's motion for summary judgment be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 7, 2018                    s/Stephanie Dawkins Davis
                                          Stephanie Dawkins Davis
                                          United States Magistrate Judge

32

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 7, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7850
<u>tammy_hallwood@mied.uscourts.gov</u>